Southeast Development Partners, LLC v. St. Johns County. Ms. Tilton. Please speak with us. Good morning. May it please the court. Erin Tilton with Stearns Weaver Miller. I have with me today my partner Liz Ellis and together we represent the appellants in this I'd like to focus my time today on one of the counts of the underlying complaint and the district court's order that really haven't gotten a lot of attention thus far in this case and that's the claim under 42 U.S.C. 1983. The reason that that claim really hasn't gotten as much attention in this case is because Southeast did not move for summary judgment on that count. We still believe that summary judgment on that count is inappropriate because there are factual issues related to proportionality and so we would ask this court to remand for the district court to resolve those factual issues. The district court's order in this case turns on its head one of the most basic foundational principles of federal and Florida constitutional law that when government imposes conditions on the use of property those conditions must bear both an essential nexus to a legitimate public purpose and also must be roughly proportionate to the impact of the proposed use. Otherwise the government affects the taking in violation of the 5th and 14th amendments to the U.S. Constitution and that is what happened here. I'll skip skip over some of the facts but suffice to say there is a roadway improvement at issue in the agreement between the parties that was estimated to cost just over $15 million due to some changes in the scope of that improvement that were made by the Florida Department of Transportation. The cost of that roadway escalated from about $15 million to $57 million and probably even higher by today's standards. Was the $15 million just an estimate which could explain how you could still justify the 50 plus million you just cited? Yes ma'am so the $15 million was an estimate there is an exhibit attached as exhibit it's exhibit c to the agreement that contains an itemized scope of what we are calling the state road 16 improvements and it does include an estimated cost of just over 15 million and acknowledges that there may be some some changes or fluctuations in that price but I point here is that we have vastly or significantly changed not we're not just talking about changes based on increasing construction costs we're talking about fundamental changes to the scope of that roadway improvement. What do we do with this section 4.e parens little six provides applicant southeast development understands that the escrow funds shall not be sufficient to pay estimated total cost of the state road 16 improvements and applicant agrees that it shall pay all costs for state road 16 improvements which are in s excess of the escrow funds yes there's that seems pretty clear to me that they're they're agreeing to pay all costs it doesn't limit obligations to paying the total project transportation contribution that you know the the exhibit c is just an estimate uh and um it just I don't see where that it the the fact that your client was um agreeing to real risk leads to an absurd result it just means you bore a real risk sure your honor so I think the my answer to that question would be first that you have to um that the provision from the agreement that you read has some defined terms in it one of which is escrow funds and if you calculate um the escrow funds that were going to be paid under the agreement it does fall short of 15 million dollars and it falls short of the estimated cost of the improvement at I believe it's about it says all costs that I don't see much ambiguity to that all costs of of the improvement which is defined by of the improvement which is defined by reference to exhibit c so our argument is that once you vastly expand or significantly expand the scope of that improvement in exhibit c we're you know that's that's beyond what we agree to what's in exhibit c is just an estimate by its nature it's a recognition that it might be more or less than right correct your honor but it's an estimate based on a scope of work so if tomorrow the you know the county or the department said you know we don't want uh concrete anymore you have to pave the road with gold essentially the district court's argument is you have to pay for that we're talking about changes in scope not necessarily cost escalations based on you know labor materials that kind of thing or minor changes that might be needed once you do get into the design process I mean there's these are there's a lot of things that we can do to make sure that we don't have to pay for that so when that cost of that roadway as modified by FDOT escalated to 57 million dollars southeast could not pay and instead sought to amend the terms of the agreement the county then adjudicated southeast in default of the agreement and withheld further plat approvals essentially freezing the entitlements for the development pending completion of that 57 million dollar improvement and that is a classic unlawful exaction as presented in Koontz v St. John's River Water Management District so in order to develop the Grand Oaks project southeast was required to enter into an agreement with the county to mitigate its transportation impacts right that's the whole purpose of that the concurrency agreement is this project is going to put additional trips on the roadway we require new development to for its impacts and so you southeast will do mitigation in order to to offset the impacts of your project so tell me how it fails under Koontz let's elaborate on your argument so under Koontz it fails because it fails the the rough proportionality element under Koontz well under Nolan and Dolan as as implemented by Koontz and the unconstitutional conditions doctrine and you know roadway mitigation or transportation mitigation mitigation of public facilities I will concede is probably a legitimate public purpose but the second element of that test was completely ignored by the district court in reaching their order they acknowledge the district court acknowledges that that is the test but then completely you know fails to analyze the rough proportionality piece and I would submit to this court that if if 15 million at the time of the contract was roughly proportional to the impacts and actually it's a little bit less than that because if you get into the breakdown of that 15 that's I think about a 10 million dollar portion that was the proportionate share to offset the impacts it was not the proportionate share I understand the costs have increased but we've had you had a lot of delays for a lot of different reasons inflation has kicked in whatever explanation how have how does the the proportionality test you to my understanding have not challenged the fact that the price has increased you've not said no no no the state is asking us to pave the roads in gold now you uh you don't seem to dispute that the cost has in fact increased so where does the proportionality test fall apart so the proportionality test falls apart your honor in that we're no longer talking about when you're when you're looking at the the cost escalation for the roadway we're no longer talking about the impacts of the project right the agreement itself is clear that the amount I think I'm not a direct quote I don't have it in front of me but the amount to mitigate the transportation impacts from this project is 10 million 132 thousand something in that ballpark you do dispute the fact that the costs have gone up you're saying that's no longer proportional we we agreed to our proportional share and there were no limits on it but let's okay let's that's that's not our argument your argument is there are limits right let's assume specifically with let's assume that we go into the project and your proportional share is 10 million out of 15 there is no provision in the contract that says this number is set in stone the costs go up this is my hypothetical the costs inflation whatever increase to 50 million what under those under those facts what you would understand that the proportional share would grow under those facts I would not agree with that your honor because proportionate share is a function of a state regulatory program and a county regulatory program that both have a formula that establishes what your proportionate share is will be locked in at the time that the agreement was entered into I would submit to you that 10 million dollars and 57 million dollars to mitigate the impacts of the exact same project cannot possibly be roughly proportional but again that is the exact conversation and the exact issue that we should be fleshing out with the district court because it is a factually intensive inquiry and that did not happen here because the issue was decided on summary judge but just to be clear you're not saying that they made up the numbers that got them to from 15 to 57 you're just still arguing what your proportionate share should be yes ma'am no I think yeah if that was the question I apologize I think we're all in agreement that the cost has gone up significantly to 57 and again it may even be higher today and that that was a combination of factors some of it is cost escalation some of it probably the larger proportion of it is changes in the scope of the project for the a public hearing on whether to enter this agreement in july of 2018 yes sir and one of the board commissioners asked southeast development council whether its obligation to construct the road was guaranteed even if the construction cost ended up higher than 15 million council said if the estimate is 15 million it costs 20 million southeast has to spend 20 million to build it it's the developer's risk right yes sir okay I will not hide from that that absolutely did happen um I would he read the same he read the same thing I did he read the same agreement read it the same way I did so I would submit to the court that first of all I think this is one of the the things that the um the district court dealt with if you if you believe the contract is unambiguous you don't have to consider that right correct but even if it does come in I would say that southeast agreed to a specific scope of work as attached as exhibit c and if the cost of that that project this what was attached in exhibit c escalated then they agreed to be responsible for that risk but I also see those as two different issues because there's the contractual issue and then there is the constitutional issue which is even if they agreed to pay more than their proportionate share under coons we recognize that when an applicant appears in front of a local government seeking a permit that they are not on level playing ground with the local government that they are are vulnerable to being coerced into giving up their constitutional rights because the permit may be worth more than what they're being exacted for and I well I do have a procedural question I just want some clarification is there still a state court action happening that addresses whether or not you all still have rights to enforce the contract yes ma'am that state court action is still ongoing and the issue has not been resolved so then what decision would we reach here or if we found in your favor but the state court finds that determination of the agreement was proper I just want to be clear what is left for us to decide that would be right for review so I just want to make sure we're clear we're also talking about different agreements right so this issue at the state court is the the status of agreements between southeast and the landowner day late and those agreements were a purchase and sale agreement and a development but if it could mean though that if the state litigation is resolved to conclude that your client doesn't have a property interest then necessarily you can't have a takings claim I don't agree with that your honor because the certificate of concurrency that travels with the the concurrency and impact fee credit agreement is an agreement with southeast development partners and so in the case of master plan communities you can sever the entitlements from the underlying land and I think there would I'm sure be a dispute between the landowner and southeast as to ownership of those but I believe just based on the agreement itself that those would belong to southeast and that's what has been taken here okay let's hear from Mr. Stewart may it please the court Greg Stewart on behalf of St. John's County let me let me go to the Judge Branch's inquiry concerning the exaction issue what they really are doing the road has increased in cost they but they are not equally increasing the proportionate share calculation which would also increase so they're really trying to make an argument by not comparing apples and oranges so so I and I also also think as terms of the exaction it's important to recognize that the original agreement and the proportionate share amount which was incorporated into that is it was valid at that time and was actually calculated by their person what we are really dealing with here is now that number is not perhaps valid because outside factors have occurred unrelated to the county and prices have increased dot they were given a choice right they were given the choice and that was their choice they could have chosen the option of a cash cash payment of proportionate share amount or they could have undertaken the obligation to construct they chose that obligation and I think in terms of the that's really your answer to the exaction yes absolutely I mean in fact no matter how the state court litigation comes out right sorry no matter how the state court litigation comes out right correct would you agree with me that if state court litigation came out to establish that they don't have a property interest uh that too would be a basis um for affirming uh yes because uh and have a basis of our motion to dismiss yeah you can't have a takings claim without a property but it's not been resolved and and and your your argument is you would win anyway just based on what we we were talking about the choice they given and the choice they took exactly and in terms of the and it is important to recognize that uh the cost estimate that was incorporated within the concurrency agreement and that's it's uh in exhibit c is that there's been a discussion concerning that that somehow is a locked in stone scope and that's the only thing that would be built there but in fact that estimate itself had a footnote to it that indicated that this was not meant to be the entire project that it would change after final design which is always the case didn't have wetlands land acquisitions that would be needed didn't have wetland mitigations that was as characterized by exhibit c probable construction costs does it really matter the southeast has raised a point that i think they may be right about that the district court entered declaratory relief against the wrong southeast entity it doesn't seem to be particularly material point but but it seems technically to be right you have a response to that i think the question is is uh there has been an assignment to the southeast land ventures and uh the argument of the appellants is that well we take the benefit but we don't have any of the obligations to that and so i think there was an issue there uh i i think i mean the terms of the assignment only assign present and future rights title and interest in uh concurrency and impact fee agreements that that that's that's what the assignment is right but i i think that so the question is does even the county held southeast development partners llc in default right yes yes because frankly we were not aware of the assignment that was part of the problem so but um but so it might be that we would have to vacate and remand for with instructions um to amend the judgment to um enter relief against southeast development not southeast land and and i that that may be what to clean that up i agree that is that is a loose end i we we kind of viewed both southeast land ventures and southeast development partners as being somewhat the same entity yeah yeah i'm just trying to make sure that everything is cleaned up and right yeah but in terms of the um the agreement itself uh judge kelly focused on the same language judge bar that you did in terms of the agreement clearly contemplates that in fact they were their obligation was to build the road and there is nothing in this agreement that indicates that it was at any time to be capped by change in scope change in costs they recognized it as pointed out their attorney represented to the board to obtain these approvals uh that she that the the southeast developer would in fact uh address any would construct the road regardless of any increase in costs and that is that the reliance that the county had well but i mean if the cost had increased from the 15 million estimated estimated to 125 million you're saying they're out of luck that's what they'd have to pay that is the that is the deal they cut and in terms of i mean that's not the case that's the but but nevertheless it is also important that and we the basis for the default was that they failed to comply with the benchmarks benchmarks were put in place for two reasons one was they wanted to make sure this project moved quickly and so it required that the design be done the permits obtained governmental approvals and what and the ponds created and acquired they wanted the county wanted to make sure that those that project moved quickly to expand the state road 16 so that it could serve the development that was ongoing as that development occurred it also had a limitation that the project itself was be completed within three years of commencement all again fast tracking this project so that is available they failed to do anything so a lot of the delay and a lot of the increase in costs are directly related to their failure to meet the benchmark schedule which was crucial to this agreement well but i also understand i hope i'm stating it correctly that even if they they would agree to the increased amount that this county's failure to include the road in their five-year capital improvement schedule made it difficult for them to raise the money necessary to be able to meet their financial obligations why is that not a breach on the county's part well that that is the claim they make it concerning that but the reality is first of all the obligation to place it within the capital improvement element only was going to come up at the next update and that had not occurred so that that condition was really not right secondly the the prejudice that they have asserted which was as you indicated that it wouldn't be given priority well the reality is is that capital improvement elements in florida are for public projects and they are prioritized for diverting public funds to build those roads this is a private road that had no public funds it was being built and funded completely by the appellant so it is something that really would not alter any kind of priority in terms of deriving funds merely by putting it in the capital improvement element that because it is not going to get a prior moving public funds from one project to another that's that's what would result for a what they're arguing is all due respect nonsensical because it really does not have anything to do with priority or their ability to raise funds it's an immaterial issue right because no matter whether that happened or not they still were obliged to pay all costs absolutely and in and in fact ultimately the um you know that particular condition uh it it it was not important enough to require it to be done immediately it was going to be the next update and these drag out over years in terms of the comprehensive plan let me ask a question just to test the limits of the proportional share and the increasing costs as the developers costs increased so too did the county's proportional share correct yeah so at some point say it's you determine that this is built and it's uh or the the road construction that there's a massive sinkhole the costs are now have ballooned to 500 million dollars at some point it's possible that the parties could say this is no longer worth it we decide to dissolve the agreement correct the parties could always come in and address those or renegotiate those issues under special circumstances and that obviously that did not occur but uh but everything all of the cost increases that they are asserting and we're not necessarily wed to this the number they've indicated that was a that was thrown out but the reality is is that the agreement required that they comply with dot specs dot gave them specs that was maybe more than they anticipated increased cost of the projects everybody knows that projects are increasing in cost daily but judge branch's point is parties can always agree to end their agreement sure or replace it or to modify it yes yeah if there are no other questions we will stand on remaining parts on our brief and ask that you affirm the decision of the district court okay thank you um miss tilton you have three minutes is the breach of the five-year capital improvement is that immaterial as he said and in any way you all didn't take the steps to invoke that action on their part yes your honor it is a material breach and it did occur here and let me um start by explaining there is a difference between a capital improvement schedule or a capital improvement plan and the capital improvement element none of that would have changed though whether you had to pay all the proportionate costs if you're wrong about the interpretation of that um i disagree your honor because when a project is within the capital improvement plan or capital improvement schedule one of the things that that allows a local government to do is to funnel other projects proportionate share amounts to that improvement and so in the event that um you know there was changes to the scope of this project that required cost recovery how would they have solicited additional proportionate share agreements to fund an already funded improvement for which you had already agreed to pay the all costs well again our position is we didn't agree i understand that but but but my question was assuming you're wrong about that see it seems to me that if you're wrong about that then it's an immaterial breach i understand that your honor but then what would be the point of having that provision in the agreement in the agreement at all i don't know but it but um it can't be that every time i mean the entire point of materiality for breaches it can't be that every time that there's a breach it's always material understood understood but that language is in the agreement for a reason and to me my interpretation just not sure that had anything to do with this fair enough um judge branch i did want to address one thing that you mentioned earlier and i apologize i think i misunderstood your question earlier um yes if the scope of the improvement cost escalation all of that if the project goes up yes proportionate share of the improvement would also go up that is exactly the reason why we've argued that this issue should not have been decided on summary judgment i think there is a factual issue here as to what uh rough proportionality means now that we are are you know in 2025 and we know what the scope of this improvement is and we know what the cost is going to be because anything above and beyond that proportionate share amount is an unlawful exaction and i understand um the argument that our clients did agree to that but the unconstitutional conditions doctrine as set forth in coons protects against that exact outcome here it does not for purposes of of you know an unlawful exaction it does not matter that an applicant agreed to a condition because they are not again not on a level playing field with the government when they go to negotiate for a permit application um and and the the fear if we don't have um that that piece of the unconstitutional conditions doctrine is that we circumvent the fifth amendment by allowing local governments to coerce an applicant into giving up their rights in order for a benefit okay miss stilton i think we understand your case we're going to move to the last part of the day so okay